**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JAMES BRUCE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 1:15-cv-00229-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS |

Plaintiff Scott James Bruce seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument. For the reasons discussed below, the Court affirms the decision of the Administrative Law Judge ("ALJ").

I.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND

A. *Procedural History*

Plaintiff applied for DIB on July 21, 2011, alleging disability beginning on November 2, 2010. AR 75, 165.[1] The Commissioner denied the claim on December 14, 2011, and upon reconsideration, on July 13, 2012. AR 82, 97. Plaintiff then requested a hearing before an ALJ. AR

---

[1] "AR" refers to the Administrative Record.

1

103.[2]

Plaintiff appeared and testified before an ALJ, John Heyer, on August 4, 2014. Also at the hearing were Plaintiff's counsel and an impartial vocational expert ("VE"). AR 47. In a written decision dated September 23, 2014, the ALJ found Plaintiff was not disabled under the Act from November 2, 2010 through the date of the written decision, September 23, 2014. AR 22. On December 11, 2014, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint. AR1; Doc. 1.

B.  *Factual Background*

The Court will not recount in detail all the facts of this case, discussing only what is relevant to this appeal.

  1.  <u>Medical Evidence</u>

In late March 2002, Plaintiff checked in to the emergency room at Anaheim Memorial Medical Center ("AMMC") due to abdominal, nausea and vomiting. Plaintiff reported that on March 15, 2002, he had fallen from a platform at work and landed on his back. He suffered multiple contusions and a CT scan of his spine showed spinous process fractures of T11 and T12. No surgery was recommended but Plaintiff was advised to take medications. AR 378-379. From 2006 to 2008, Plaintiff underwent a number of procedures: cystoscopies and biopsies of the bladder in 2006; repair of right inguinal hernia in 2008, and right carpal tunnel release in 2008. AR 392-421, 430, 432, 434.

In August and September 2008, Plaintiff consulted with Dr. Tien Nguyen at the Orange County Brain and Spine Group. Dr. Nguyen assessed Plaintiff with cervical radiculopathy secondary to disk herniation at C5-6 and C6-7. He provided Plaintiff with several options ranging

---

[2] Plaintiff did not, as required by the Social Security Administration (SSA), request a hearing within sixty days of July 13, 2012. The error, however, appears to have stemmed from the SSA. In a letter dated October 14, 2013, Plaintiff's counsel informed the SSA that the July 13, 2012 Notice of Reconsideration was improperly served on counsel due to an incomplete address. Counsel requested that the SSA reopen Plaintiff's case and that the October 14, 2013 letter serve as a request for a hearing. AR 103. The SSA did not reject counsel's request.

from conservative management of pain to surgery.  Plaintiff chose surgery.  AR 572-573, 577-578.

In September 2008, Plaintiff underwent an anterior cervical C5-6 and C6-7 discectomy and an anterior cervical C5-7 fusion and plating with autograft.  AR 574.  A week after surgery, Plaintiff had a follow up with Dr. Nguyen, who noted that Plaintiff was doing well and could return to work within two weeks "with light duties only" and could "do some light exercises."  In a December 2008 follow up, Dr. Nguyen found Plaintiff doing well with no evidence of infection.  However, there was no fusion yet between the inferior end plates of C5 and the graft.  A month later, in a January 2009, Plaintiff reported occasional pain down his arms and neck, with the latter being occasionally severe when sitting for prolonged periods.  Dr. Nguyen observed some fusion although not completely, and expressed hope of fusion with time.  AR 569-571.

More than two years later, at a follow up with Dr. Nguyen in May 2011, Plaintiff reported two incidents which triggered his neck pain.  In the first instance, Plaintiff was using a sledge hammer to repair a car which resulted in right neck and elbow pain.  In the second instance, Plaintiff experienced bilateral neck pain and immobility for two days after driving his motorcycle in a windy area.  Consequently, he used a cuff to help with the pain and swelling in the elbow.  Dr. Nguyen observed slight displacement of the plate from the vertebral body, degenerative changes, and nonfusion.  He opined the nonfusion may have been due to Plaintiff's smoking.  He noted that MRI and X-ray are needed but as Plaintiff had no insurance, medication was prescribed.  AR 567-568.

Between 2011 and 2012, a number of physicians provided their functional assessments of Plaintiff.  They include Drs. Laja Ibraheem, Concepcion A. Enriquez, Timothy Walker, and Richard May.  In October 2011, Dr. Enriquez completed an internal medical consultation of Plaintiff at the request of the Department of Social Services ("DSS").  He opined that Plaintiff could: (1) lift/carry 20 pounds occasionally and 10 pounds frequently; (2) stand/walk/sit with normal breaks for 6 hours in an 8-hour workday; (3) occasionally engage in above-the-shoulder lifting, pulling and pushing; and (4) frequently engage in handling, grasping and fingering.  AR 602.

In November 2011, Dr. Ibraheem completed a psychiatric evaluation of Plaintiff also at the request of DSS.  During the evaluation, Plaintiff reported his current level of functioning to include the ability to dress and bathe himself, manage his own money, and go places unaccompanied, but that he had no daily activities.  She opined that Plaintiff would be able to focus attention adequately and interact with supervisors, co-workers, and the general public.  He would have zero to minimal difficulty following one and two-part instructions, remembering and completing simple tasks, tolerating inherent workplace stress, maintain regular attendance, and work without supervision.

In December 2011, Dr. Walker, a medical consultant, completed a check the box form assessment and opined that Plaintiff could: (1) lift/carry 20 pounds occasionally and 10 pounds frequently, (2) stand/walk/sit with normal breaks for about 6 hours in an 8-hour workday; and (3) push/pull without limitations.  He concluded Plaintiff had no postural, manipulative, visual, communicative, and environmental limitations.  Dr. Walker considered Plaintiff's activities of daily living and medial source statement in arriving at his findings.  AR 624-630.  The findings found support in Dr. May, another medical consultant, who in June 2012, recommended affirming Dr. Walker's assessment of a light RFC with the addition of manipulative limitations.  AR 640.

After the Commissioner denied the DIB claim on reconsideration, Plaintiff visited his primary physician, Dr. Hoong Tang for purposes of a report to DSS.  Plaintiff's neck was tender to percussion and pain from all neck movement.  His upper and lower extremities moved well, shoulder and elbow joints had full range of motion, hip and knee joints had good range of motion, and lumbar pain was normal.  His neurological exams were all normal.  Dr. Tang's impressions were that Plaintiff had neck and upper back pain second to the old fracture of the T1 vertebra from the fall at work, and that he had C5-6 and C6-7 discectomy with bone graft and placement of a metal cage with six screws.  In sum, Dr. Tang opined that Plaintiff had real neck and upper back pain, including severe anxiety and depression from the "parade of illness and injuries he suffered since 2001." AR 633.

About two years later, in December 2013, Dr. Nguyen completed a form, captioned "Listing § 1.04A — Spinal Nerve Root Compression," in December 2013. Therein, he opined that Plaintiff had a disorder of the spine (non-fusion and cervical degeneration) with evidence of nerve root compression characterized by neuro-anatomic distribution of pain (neck pain, bilateral shoulder pain and left arm pain), limited motion throughout the spine, and sensory/reflex loss. However, Dr. Nguyen found no muscle weakness or signs of motor loss. He thus concluded that Plaintiff's combined impairments were medically equivalent to the severity of conditions associated with listing 1.04A. On the question of how Plaintiff's combined impairments were medically equivalent to listing 1.04A, Dr. Nguyen stated that "Patient likely has non-fusion [at] previous surgery site." AR 729-730.

Later, in June 2014, Dr. Nguyen completed a medical source statement, a check the box form concerning Plaintiff's physical ability to do work-related activities. Dr. Nguyen opined that Plaintiff could: (1) lift/carry up to 10 pounds frequently, between 11 to 20 pounds occasionally, but never more than 21 pounds; (2) sit for 3 hours, stand for 2 hours, and walk for 1 hour without interruption; (3) sit for 5 hours, stand for 3 hours, and walk for 2 hours in an 8-hour workday; (4) frequently engage in handling, fingering, feeling, and push/pull with both hands; (5) never reach overhead but could occasionally reach in all other directions with the right hand; (6) frequently reach overhead and in all directions with the left hand; (7) continuously operate foot controls. He attributed the limitation to nonfusion at C6-7, the surgery site. Posturally, Plaintiff could never climb ladders of crawl, but could occasionally climb stairs and ramps, kneel and crouch, frequently stoop, and continuously balance. With regard to environmental limitations, Plaintiff could never be exposed to unprotected heights, but could occasionally be exposed to moving mechanical parts, extreme cold and heat and vibrations, and frequently operate a motor vehicle. Finally, Dr. Nguyen opined that Plaintiff could engage in activities such as shopping, walk a block at a reasonable pace, use public transportation, prepare a simple meal, and maintain personal hygiene. He did not think Plaintiff

5

could travel without a companion for assistance due to right arm pain.  Importantly, Dr. Nguyen indicated the above limitations began on June 9, 2014.  AR 750-755.

    2.  <u>Plaintiff's Written Testimony</u>

In his first disability report completed in July 2011, Plaintiff stated the following conditions limited his ability to work: bladder cancer of unknown stage which was removed, back injury, spinal disc displacement, and peripheral vision loss.  Though the conditions did not become severe enough to prevent him from working until November 2010, Plaintiff stopped working in October 2008 after being laid off.  He had been working as a recycling supervisor for eleven years.  AR 179-180.

Plaintiff completed an Adult Function Report in August 2011.  Therein, Plaintiff stated that he provided care for his young son and their pets.  Due to his conditions, Plaintiff struggled with sleep and personal care.  He no longer engaged in hobbies due to immobility of the body.  He did not go anywhere on a regular basis.  Plaintiff conditions affected his postural and ability to engage in yardwork and housework.  He was able, however, to prepare meals one to two times daily, do some light sweeping and watering, laundry, and wash dishes.  AR 189-193.

In his latest disability report from October 2013, Plaintiff reported changes in his conditions including swelling of the hands and legs lasting a day or two, and depression.  He was not, at the time, taking any medications.  He indicated no changes in his daily activities, although his fiancée was helping with the cooking, driving, shopping, and care of his son.  AR 231-236.

    3.  <u>Plaintiff's Testimony Before the ALJ</u>

At the time of the hearing on August 4, 2014, Plaintiff was 52 years old.  He had a driver's license and drove occasionally.  He was able to lift no more than five pounds.  He was able to lift a gallon of milk, "but not without serious side effects."  He could stand for as long as twenty minutes and walk and sit for as long as fifteen minutes before the discomfort set in.  AR 50-53.

A typical day for Plaintiff consisted of waking up and sitting around for about an hour before he could get moving, watching television, and staying inside the house.  He did not vacuum, sweep,

6

do laundry or wash the dishes. He did not use a computer and did very little exercise. Plaintiff was taking Norco which caused him to throw up and lose his appetite. AR 53-57.

Plaintiff did not have a pain-free day. AR 64. Any extension of his arms or limbs caused his joints to swell. He experienced nausea on a daily basis and a tingling sensation in his hands "all the time," lasting up to as long as twenty minutes. His knees would swell when he climbed the stairs or carry something. He had lost nearly forty pounds, going from 200 pounds to 163 pounds. AR 62-65.

4. ALJ's Decision

A claimant is disabled under Titled II if he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. §§ 423(d)(1)(A). To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[3]

The ALJ here employed the five-step sequential process and found Plaintiff was not disabled under the Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 2, 2010. At step two, Plaintiff had the following severe

---

[3] The ALJ must determine: "(1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quotations, citations and footnote omitted); 20 C.F.R. §§ 404.1520 (2011). Residual functional capacity is "the most" a claimant "can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1) (2011). "The claimant carries the initial burden of proving a disability in steps one through four of the analysis. However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

impairment: cervical spine abnormality.  At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Based on the record, Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b), except he can lift 20 pounds and complete an eight hour workday if given the option to alternate between sitting and standing, as needed, in one hour increments.  At step four, the ALJ found Plaintiff unable to perform any past relevant work.  But at step five, the ALJ concluded there are jobs existing in significant numbers in the national economy which Plaintiff could perform.  These include: small parts assembler, small products assembler, and ticket seller.  Consequently, the ALJ found Plaintiff was not disabled from November 2, 2010, through September 23, 2014, the date of the ALJ's written decision.  AR 16-22.

## II.    DISCUSSION

A. *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision must be upheld."  *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error.

8

*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Nevertheless, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

B. *Analysis*

Plaintiff raises one issue on appeal: whether the ALJ properly rejected the opinion of Dr. Nguyen, a treating physician. He contends that in giving little weight to Dr. Nguyen's opinion, the ALJ's reasons lack specificity and are contrary to the record. The Commissioner does not dispute Plaintiff's claim that Dr. Nguyen is a treating physician. However, she points to evidence in the record which buttress the ALJ's reasons. She asserts that the ALJ's overall discussion of the record provides sufficient reasons for rejecting Dr. Nguyen's opinion.

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (footnote and citation omitted). To reject a treating physician's opinion which is contradicted by another physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. If the treating physician's opinion is uncontradicted, clear and convincing reasons are required. *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (quotations omitted).

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Id*. at 421-22 (footnote omitted).

Because the medical consultants' opinions and that of Dr. Enriquez support the ALJ's RFC findings, in contrast to Dr. Nguyen's finding of a disabling impairment, the ALJ was required to provide specific and legitimate reasons for rejecting the latter's opinions.

At step three, the ALJ discussed various medical opinions, including those of Dr. Nguyen. He recounted the "Listing § 1.04A — Spinal Nerve Root Compression" form completed in December 2013 and the medical source statement completed in June 2014. He then concluded his discussion of Dr. Nguyen's opinions as follows: "Dr. Nguyen's opinions are given little weight because they are inconsistent with the record as a whole as well as the claimant's own testimony." AR 20. Indeed, this is the type of general language lacking in specificity and devoid of interpretation which the Ninth Circuit finds unacceptable. *See id*. A regurgitation of the physician's opinions followed by a statement that the opinions are inconsistent with the record and the claimant's testimony falls short of a reasoned explanation. And the Court will not strain to find a reasoned explanation where none exists. Failing to provide more than a conclusory statement, the ALJ therefore erred.

But such error was inconsequential to the ultimate nondisability determination. *See Robbins*, 466 at 885; *see also Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497, (2004) ("Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned.") (internal quotations omitted). With regard to the "Listing § 1.04A — Spinal Nerve Root Compression" form, Dr. Nguyen did not opine therein that Plaintiff's impairments fell squarely under listing 1.04A[4] as he had no muscle weakness and signs of motor loss. Rather, Dr. Nguyen opined that Plaintiff's

---

[4] Under the list of musculoskeletal impairments, section 1.04A includes:

combined impairments were *equivalent* to the severity of conditions associated with listing 1.04A. And the ALJ was not required to adopt this opinion when Dr. Nguyen's own subsequent opinion in June 2014 supports an RFC finding of light work, as does the opinions of three other physicians. *See* 96-2p (explaining that an ALJ is not required to give a treating opinion controlling weight where it is inconsistent with other substantial evidence in the record) and SSR; *see also* 20 C.F.R. § 404.1526 ("When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding.").

First, despite his opinion concerning listing 1.04A, Dr. Nguyen later provided an opinion which in fact supports the RFC determination. Specifically, the limitations opined in the June 2014 medical source statement—lift/carry up to 10 pounds frequently, between 11 to 20 pounds occasionally, but never more than 21 pounds; sit for 3 hours, stand for 2 hours, and walk for 1 hour without interruption; and sit for 5 hours, stand for 3 hours, and walk for 2 hours in an 8-hour workday; frequently engage in handling, fingering, feeling, and push/pull with both hands; never reach overhead but could occasionally reach in all other directions with the right hand; frequently reach overhead and in all directions with the left hand; and continuously operate foot controls— do not conflict with the conclusion that Plaintiff could perform light work[5] and complete an 8-hour day if given the option to alternate between sitting and standing, as needed in one hour increments. It therefore belies any finding that Plaintiff suffered a disabling impairment precluding him from

---

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

11

performing a job involving light work.

Second, Drs. Enriquez, Walker, and May all provided opinions, as the ALJ discussed, which also support the RFC determination.[6] That they are not treating physicians does not make their opinions irrelevant. *See* 20 C.F.R. § 404.1527 ("Regardless of its source, we will evaluate every medical opinion we receive.") The rule that more weight is given to a treating physician than an examining/non-examining physician is not absolute. *See Lester*, 81 F.3d at 830; *see also* 20 C.F.R. § 404.1527(c)(2).

Finally, in assessing Plaintiff's credibility, the ALJ stated the activities of daily living do not suggest the limitations one would expect from an individual with Plaintiff's claimed impairments. The ALJ referenced Plaintiff's (1) oral statements at the psychiatric evaluation in November 2011 that he could dress himself, bathe himself, manage his own money, and go places unaccompanied and (2) written testimony in the Adult Function Report that he could wash dishes. Objectively viewed, these activities do not support a finding of disability. Thus, despite failing to explain with specificity and ideal clarity the reasons why he gave Dr. Nguyen's opinions little weight, the ALJ's error here was harmless.

Finding the ALJ's error harmless, the Court need not address Plaintiff's argument concerning the credit-as-true rule.

///

///

///

///

///

---

[6] While Dr. Tang's January 2012 report confirmed Plaintiff's neck and upper back pain, he provided no functional assessment.

12

### III.    CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.   The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff Scott James Bruce.

IT IS SO ORDERED.

Dated:   **July 21, 2016**                            **/s/ Sandra M. Snyder**
                                                                      UNITED STATES MAGISTRATE JUDGE